## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

PHILLIP LANDE                                    CIVIL ACTION

versus                                           NO. 11-3130

LYNN COOPER, WARDEN                              SECTION: "F" (3)

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Phillip Lande, is a state prisoner incarcerated at the Avoyelles Correctional Center, Cottonport, Louisiana.  On March 2, 2005, he was convicted of two counts of aggravated incest under Louisiana law.[1]  On July 13, 2005, he was sentenced on each count to a concurrent term

---

[1] State Rec., Vol. X of XIV, transcript of March 2, 2005, pp. 76-77; State Rec., Vol. VII of XIV, jury verdict forms.

of fifteen years imprisonment.[2]  On March 22, 2006, he was found to be a multiple offender and was resentenced as such on each count to a concurrent term of fifteen years imprisonment without benefit of probation or suspension of sentence.[3]  On June 28, 2006, the Louisiana Fifth Circuit Court of Appeal affirmed his convictions.[4]  His related writ application was then denied by the Louisiana Supreme Court on April 20, 2007.[5]

On July 18, 2008, petitioner, through counsel, filed a timely application for post-conviction relief with the state district court.[6]  That application was denied on November 6, 2008.[7]  He thereafter filed a related writ application with the Louisiana Fifth Circuit Court of Appeal.  On March 31, 2009, that application was granted in part, and the matter was remanded to the state district court for further proceedings on several claims.[8]  With respect to some of those claims, the state district court then again denied relief on July 12, 2010,[9] and petitioner's related writ application challenging that judgment was denied by the Louisiana Fifth Circuit Court of Appeal on October

---

[2]  State Rec., Vol. X of XIV, transcript of July 13, 2005; State Rec., Vol. II of XIV, minute entry dated July 13, 2005.

[3]  State Rec., Vol. II of XIV, minute entry dated March 22, 2006.

[4]  State v. Lande, 934 So.2d 280 (La. App. 5th Cir. 2006) (No. 06-KA-24); State Rec., Vol. II of XIV.

[5]  State v. Lande, 954 So.2d 154 (La. 2007) (No. 2006-K-1894); State Rec., Vol. III of XIV.

[6]  State Rec., Vol. III of XIV.

[7]  State Rec., Vol. III of XIV, Order dated November 6, 2008.

[8]  Lande v. Cooper, No. 09-KH-77 (La. App. 5th Cir. Mar. 31, 2009); State Rec., Vol. III of XIV.

[9]  State Rec., Vol. IV of XIV, Order dated July 12, 2010.

5, 2010.[10]  After holding an evidentiary hearing on petitioner's remaining claim, the state district court also denied relief on that claim on April 29, 2011,[11] and the Louisiana Fifth Circuit Court of Appeal likewise denied relief on July 26, 2011.[12]  Petitioner's related post-conviction writ application was then denied by the Louisiana Supreme Court on March 23, 2012.[13]

In the interim, on December 21, 2011, petitioner, through counsel, filed the instant federal *habeas corpus* petition[14] and an accompanying motion for a stay.[15]  On April 11, 2012, the Court granted the unopposed motion for a stay to allow petitioner an opportunity to exhaust his remedies in state court.[16]  The proceedings have since been reopened,[17] and the state has filed a response arguing that, although petitioner's federal application is timely, he is not entitled to *habeas corpus* relief.[18]

---

[10]   Lande v. Cooper, No. 10-KH-768 (La. App. 5th Cir. Oct. 5, 2010); State Rec., Vol. IV of XIV.

[11]   State Rec., Vol. XIII of XIV, transcript of April 29, 2011; State Rec., Vol. IV of XIV, minute entry dated April 29, 2011.

[12]   Lande v. Cooper, No. 11-KH-695 (La. App. 5th Cir. July 26, 2011); State Rec., Vol. IV of XIV.

[13]   Lande v. Cooper, 85 So.3d 87 (La. 2012) (No. 2011-KP-1857); State Rec., Vol. XIV of XIV.

[14]   Rec. Doc. 1.

[15]   Rec. Doc. 2.

[16]   Rec. Doc. 14.

[17]   Rec. Doc. 17.

[18]   Rec. Doc. 24.

I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary

to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." <u>Bell</u>, 535

U.S. at 694.

   Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals

has explained:

> A state court decision is contrary to clearly established precedent if
> the state court applies a rule that contradicts the governing law set
> forth in the [United States] Supreme Court's cases.  A state-court
> decision will also be contrary to clearly established precedent if the
> state court confronts a set of facts that are materially
> indistinguishable from a decision of the [United States] Supreme
> Court and nevertheless arrives at a result different from [United
> States] Supreme Court precedent.

<u>Wooten v. Thaler</u>, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets,

and footnotes omitted).

   Regarding the "unreasonable application" clause, the United States Supreme Court

has explained:

> [A] state-court decision can involve an "unreasonable application" of
> this Court's clearly established precedent in two ways.  First, a
> state-court decision involves an unreasonable application of this
> Court's precedent if the state court identifies the correct governing
> legal rule from this Court's cases but unreasonably applies it to the
> facts of the particular state prisoner's case.  Second, a state-court
> decision also involves an unreasonable application of this Court's
> precedent if the state court either unreasonably extends a legal
> principle from our precedent to a new context where it should not
> apply or unreasonably refuses to extend that principle to a new
> context where it should apply.

<u>Williams v. Taylor</u>, 529 U.S. 362, 407 (2000).   The Supreme Court has noted that the focus of this

inquiry "is on whether the state court's application of clearly established federal law is objectively

unreasonable, and we stressed in <u>Williams</u> that an unreasonable application is different from an

- 5 -

incorrect one."  Bell, 535 U.S. at 694; see also Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011)

("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application

of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."),

cert. denied, 132 S.Ct. 1537 (2012).

    While the AEDPA standards of review are strict and narrow, they are purposely so.

As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
>     If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants – and federal courts –

from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of

state courts.").

## II.  Facts

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts

of this case as follows:

> Defendant, Phillip Lande ("Lande"), was charged in a bill of
> information on September 19, 2003 with five counts of aggravated
> incest, in violation of LSA-R.S. 14:78.1, involving three different
> juvenile victims. He pled not guilty and filed several pre-trial
> motions. Lande proceeded to trial on February 22, 2005. After seven
> days of trial, a six-person jury found Lande guilty as charged on
> counts one and four, relating to the aggravated incest of C.M., and
> not guilty on counts two, three, and five. ...
> ....
> On July 14, 2001, defendant married S.L., who had three
> minor children, V.M., N.M., and C.M., from a previous
> marriage.[FN1]  In June 2003, Detective Brian McGregor, with the
> Kenner Police Department, received a complaint from the children's
> stepmother, Maria, who was married to the children's biological
> father.  Maria indicated that the three girls may have been victims of
> sexual molestation.  Detective McGregor advised Maria to bring the
> children to the Kenner Police Department where he individually
> interviewed them.   The children were later interviewed at the
> Children's Advocacy Center ("CAC") and subsequently examined at
> Children's Hospital.  As a result of the investigation, Lande was
> arrested.
>
> > [FN1]  The children ranged in age from twelve to
> > fifteen at the time of trial.  Their initials are used
> > under the authority of LSA-R.S. 46:1844(W)(3),
> > which allows the court to identify a crime victim who
> > is a minor or a victim of a sex offense by using his or
> > her initials.
>
> At trial, C.M., who was twelve years old at the time of trial,
> testified that, while Lande lived with them in the family home, he
> showed her pornographic magazines and made her watch
> pornographic movies on television on several occasions.   She
> explained the men and women on the television were naked and
> having sex.  C.M. also stated defendant made her touch his "private
> part" on more than one occasion.  She recounted the first time Lande

made her touch him, which was after Lande and her mother married. C.M. testified Lande called her into his room, locked the door, told her to sit down, put lotion on her hand, and told her to rub lotion on his private part. She stated this occurred while naked people were on the television having sex. C.M. stated she "rub[bed] his private part until white stuff came out." She testified Lande threatened to knock her teeth out if she told anyone. C.M. stated that, once they moved into an apartment and defendant was no longer living in the family home, she confided in her mother that Lande made her touch him. C.M.'s mother confirmed that C.M. disclosed the incident in May or June of 2003 but testified she did not report the matter to the police because she thought C.M. had already told her father. C.M. testified she told her father about the incidents two days after confiding in her mother. C.M.'s father stated he learned of the abuse through his wife, Maria, who was told by her daughter in whom N.M. had confided. Upon learning of the abuse, C.M.'s father confronted all three girls and the girls' mother before involving the police.[19]

### III.  Petitioner's Claims

### A.  Trial Errors

Petitioner claims that his right to due process and a fair trial were violated when:

1.      The trial court wrongly denied a defense motion that the term "victim" be prohibited at trial because it would violate the petitioner's presumption of innocence.[20]

2.      The following comments were made:

    a.      "During the bond reduction hearing, the trial court made a statement to the effect that he

---

[19]  Lande, 934 So.2d at 284-85; State Rec., Vol. II of XIV.

[20]  Rec. Doc. 1-2, pp. 8-9.

would not reduce Mr. Lande's bond because 'he is guil–'."[21]

b.   During a bench conference concerning a defense objection, the judge observed: "You [defense counsel] can't do any worse with this witness.  She's eating your lunch."[22]

c.   At the end of one of the days of trial, the judge "blamed" defense counsel for prolonging the trial and "pointed out his weaknesses to the jury" by stating:

>    Okay.  I'm sorry.  We could go a little late.   One of the defense attorneys is taking chemo and is diabetic, and so gets tired by the end of the day.  So he's tired.  We're going to try to wrap this up tomorrow.  I mean, I have some concerns.  If it's not tomorrow, I don't think we're going to do Saturday.  I think we're probably going to do Monday.
>    ....
>    ... One of the attorneys has to get a shot tomorrow, so he's got to see the doctor and he said he was going to

---

[21]  Rec. Doc. 1-2, p. 9.

[22]  Rec. Doc. 1-2, p. 9; State Rec. Vol. VIII of XIV, transcript of February 24, 2005, p. 41.

go for 8:30 so he'll try not to hold us
up.[23]

d.    At a bench conference, the trial judge allegedly asked defense counsel:  "Are you sure you don't want to make a deal because she cleaned your clock?"[24]

e.    "During the trial itself, the court again exhibited its impatience with the defense, attending to personal matters at the bench during cross-examinations and defense witnesses."[25]

f.    "Court personnel made comments as to each complainants' credibility and believability in such a loud voice that Petitioner could hear the remarks. One court staff member commented after V.M. that the girl was lying,

---

[23]  Rec. Doc. 1-2, pp. 9-10; State Rec. Vol. IX of XIV, transcript of February 24, 2005, pp. 146-47.

[24]  Rec. Doc. 1-2, p. 10.

[25]  Rec. Doc. 1-2, p. 10.

made the same comment after N.M., but said

that C.M. was telling the truth."[26]

3.      The trial judge denied petitioner "the right to present a

defense" when he:

a.      denied a defense motion requesting that their

expert be allowed to examine the three alleged

victims, and

b.      denied petitioner access to the Kenner Police

Department records concerning the allegations

of abuse made by a fourth child, F.S.[27]

4.      The trial court "[o]rdered Petitioner to submit to an

improperly conducted Polygraph test."[28]

In its response in this proceeding, the state argues that Subclaims 1, 2, and 4 are

procedurally barred and that Subclaim 3 has no merit.  For the following reasons, the state is clearly

correct.

The United States Fifth Circuit Court of Appeals has held:

A claim that a state has withheld a federal right from a person
in its custody may not be reviewed by a federal court if the last state
court to consider that claim expressly relied on a state ground for

---

[26]  Rec. Doc. 1-2, p. 10.

[27]  Rec. Doc. 1-2, p. 11.

[28]  Rec. Doc. 1-2, p. 11.

denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision.  To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims.  This rule applies to state court judgments on both substantive and procedural grounds.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).

Here, the state courts clearly rejected Subclaims 1, 2, and 4 on procedural grounds.

Those subclaims were first asserted in the state post-conviction proceedings.  On November 6, 2008, the state district court denied relief, stating:

> CLAIM ONE
> Denial of pretrial request.  This sub-claim is barred from review because it could have been, but was not, raised at trial or on appeal.  Under La.C.Cr.P. art. 930.4, such claims should be denied.
> Inappropriate and prejudicial comments.  This sub-claim is not preserved for review in this proceeding.  This claim should have been objected to at trial and raised on appeal.  It, too, is barred because it could have been, but was not, raised at trial or on appeal. Under La.C.Cr.P. art. 930.4, such claims should be denied.
> ....
> Ordered petitioner to submit to an improperly conducted polygraph test.  This sub-claim is barred from review because it could have been, but was not, raised at sentencing or on appeal.  Under La.C.Cr.P. art. 930.4, such claims should be denied.[29]

---

[29]  State Rec., Vol. III of XIV, Order dated November 6, 2008.

However, because the trial court had not afforded petitioner an opportunity to state his reasons for his failure to raise the issues previously, the Louisiana Fifth Circuit Court of Appeal vacated the foregoing rulings and ordered the trial court to correct that error and reconsider the matter.[30]

On remand, petitioner argued that the claims were not raised previously due to ineffective assistance of appellate counsel and therefore should not be barred on post-conviction review.[31]  The trial court rejected that contention and, therefore, again found the claims procedurally barred.  The trial court held:

> Petitioner informs the court that these claims and sub-claims were not raised on direct appeal due to ineffectiveness of appellate counsel, and that said claims should not be barred from review under LSA-C.Cr.P. art. 930.4.
>
> It is clear that the petitioner has a Sixth Amendment right to effective legal counsel.  Under the well-known standard set out in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and <u>State v. Washington</u>, 491 So.2d 1337 (La. 1986), a conviction must be reversed if the defendant proves (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect.  <u>State v. Legrand</u>, 02-1462 (La. 12/3/03), 864 So.2d 89.
>
> To be successful in arguing a claim of ineffective assistance of counsel, a post-conviction petitioner must prove deficient performance to the point that counsel is not functioning as counsel within the meaning of the Sixth Amendment.  A petitioner must also prove actual prejudice to the point that the results of the trial, or in this case, the appeal, cannot be trusted.  It is absolutely essential that

---

[30] <u>Lande v. Cooper</u>, No. 09-KH-77 (La. App. 5th Cir. Mar. 31, 2009); State Rec., Vol. III of XIV.

[31] State Rec., Vol. III of XIV, Response to Fifth Circuit Order on Application for Post-Conviction Relief and Supplemental Response to Fifth Circuit Order on Application for Post-Conviction Relief.

both prongs of the <u>Strickland</u> test must be established before relief will be granted by a reviewing court.

Furthermore, there is a strong presumption that counsel's performance is within the wide range of effective representation. Effective counsel, however, does not mean errorless counsel and the reviewing court does not judge counsel's performance with the distorting benefits of hindsight, but rather determines whether counsel was reasonably likely to render effective assistance. <u>State v. Soler</u>, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075.

In reviewing claims of ineffective assistance of counsel on direct appeal, the Supreme Court of the United States has expressly observed that appellate counsel "need not advance every argument, regardless of merit, urged by the["] defendant. <u>Evitts v. Lucey</u>, 469 U.S. 387, 394 (1985).   The Court gives great deference to professional appellate strategy and applauds counsel for "winnowing out weaker arguments on appeal and focusing on one central issue if possible, and at most a few key issues.["]  <u>Jones v. Barnes</u>, 463 U.S. 745 (1983).  This is true even where the weaker arguments have merit.  <u>Id</u>. at 751-2.

When the claim of ineffective assistance of appellate counsel is based on failure to raise the issue on appeal, the prejudice prong of <u>Strickland</u> test requires the petitioner to establish that the appellate court would have granted relief, had the issue been raised.  <u>United States v. Phillips</u>, 210 F.3d 345, 350 (5 Cir. 2000).

<u>Claim #1, sub-claim #1</u>

Petitioner contends that counsel was ineffective in failing to raise on appeal that petitioner was denied due process and a fair trial by the court's denial of a pre-trial request barring the use of the word "victim" in trial.  As the State points out in its response, petitioner fails to meet either prong of the <u>Strickland</u> test.  Petitioner does not point to specific instances that he claims are prejudicial, and cannot prove that prejudice resulted, especially considering the fact that petitioner was acquitted on three of the five counts of which he was charged.  Petitioner was convicted only on the counts pertaining to one of the complainants, yet all of the complainants were referred to as "victims."

Additionally, petitioner fails to prove that counsel would have been successful in pursuing this issue on appeal.  As the State points out, petitioner cites no Louisiana jurisprudence or authority supporting this claim.  The court finds that petitioner has not met his

burden, as he does not establish that the appellate court would have granted relief.  Petitioner is not entitled to relief on this claim.

Claim #1, sub-claim #2

Petitioner contends that counsel was ineffective in failing to raise on appeal that petitioner was denied due process of law and a fair trial due to inappropriate and prejudicial comments.  Petitioner argues that he was prejudiced by a comment made by the court at the bond reduction hearing.  Petitioner fails to show how counsel was ineffective, or how he was prejudiced, as the jury was not present at this proceeding, and therefore not influenced by such comment. Petitioner also argues that several of the comments by the judge while presiding in this case at trial were prejudicial, however, the record reflects that these comments were made at the bench and not heard by the jury, and did not affect the outcome of the trial.

Petitioner argues that the judge in this case acted unprofessionally in attending to personal matters while presiding during the trial.  Petitioner provides no evidence in support of this argument.  This allegation is merely speculative.

Petitioner argues that court personnel commented on witnesses' credibility.  However, petitioner provides no evidence to support this claim.  Additionally, as the state points out, counsel cannot be faulted or held accountable for not pursuing this claim on appeal, as the record does not support that such comments were ever made. Furthermore, petitioner does not prove prejudice, as petitioner was acquitted of three of the five counts of which he was charged.

The court finds that petitioner has not met his burden, as he does not establish that the appellate court would have granted relief. Petitioner is not entitled to relief on this claim.

Claim #1, sub-claim #4

Petitioner claims that counsel was ineffective in failing to raise on appeal that petitioner was denied due process and a fair trial by the trial court ordering petitioner to submit to a polygraph examination.  As the state submits, petitioner fails to include in his application that the trial court did not require the polygraph examination, but rather petitioner himself filed a motion for the exam following the trial.  The defense contacted the examiner to conduct the exam.

Petitioner fails to show prejudice, as the court sentenced him below the maximum sentence allowed, and ran sentences concurrently.  His claim is purely speculative and he provides no

evidence in support thereof.  Furthermore, the court finds that petitioner has not met his burden, as he does not establish that the appellate court would have granted relief.  Petitioner is not entitled to relief on this claim.

....

The court finds that ineffective assistance of appellate counsel is not an excusable reason for failure to raise these claims on appeal. These claims are procedurally barred and dismissed under LSA-C.Cr.P. art. 930.4.  The court specifically finds that the petitioner has not met his burden of proof that counsel rendered substandard performance, and that appellate counsel was ineffective to raise the above claims on direct appeal.  In sum, petitioner does not establish that his attorney's performance was constitutionally deficient or that he was prejudiced as a result, and he fails to establish that the appellate court would grant relief.[32]

The Louisiana Fifth Circuit Court of Appeal found no error with respect to that ruling,[33] and the

Louisiana Supreme Court denied relief without assigning additional reasons.[34]

Therefore, the state courts clearly rejected Subclaims 1, 2, and 4 on procedural

grounds, specifically La. Code Crim. P. art. 930.4(B) and (C).[35]  It is well-established that article

---

[32]  State Rec., Vol. IV of XIV, Order dated July 12, 2010, pp. 1-3.

[33]  Lande v. Cooper, No. 10-KH-768 (La. App. 5th Cir. Oct. 5, 2010); State Rec., Vol. IV of XIV.

[34]  Lande v. Cooper, 85 So.3d 87 (La. 2012) (No. 2011-KP-1857); State Rec., Vol. XIV of XIV. "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground." Finley, 243 F.3d at 218.

[35]  Article 930.4(B) and (C) provide:

B. If the application alleges a claim of which the petitioner had knowledge and inexcusably failed to raise in the proceedings leading to conviction, the court may deny relief.

C. If the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court may deny relief.

930.4(B) and (C) are independent and adequate state court grounds sufficient to procedurally bar claims from federal *habeas* review.  See, e.g., Robinson v. Cooper, Civ. Action No. 12-1327, 2013 WL 2154011, at *5 (E.D. La. May 2, 2013); Brown v. Cain, Civ. Action No. 11-2267, 2011 WL 7042222, at *8 (E.D. La. Dec. 20, 2011), adopted, 2012 WL 123288 (E.D. La. Jan. 17, 2012), aff'd, No. 12-30126, 2013 WL 3455679 (5th Cir. July 10, 2013); Thomas v. Cain, Civ. Action No. 11-2408, 2011 WL 6046536, at *5 (E.D. La. Nov. 17, 2011), adopted, 2011 WL 6028779 (E.D. La. Dec. 5, 2011); Young v. Travis, Civ. Action No. 07-3542, 2011 WL 494811, at *8 (E.D. La. Jan. 13, 2011), adopted, 2011 WL 494802 (E.D. La. Feb. 4, 2011); Jones v. Cain, Civ. Action No. 10-0187, 2010 WL 3312592, at *5-6 (E.D. La. July 29, 2010), adopted, 2010 WL 3312594 (E.D. La. Aug. 19, 2010); Green v. Cooper, Civ. Action No. 06-1657, 2009 WL 87590, at *10 (E.D. La. Jan. 8, 2009).

Where, as here, the state courts have rejected a petitioner's claim based on independent and adequate state procedural rules, "federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice."  Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999). In the instant case, petitioner demonstrates neither.

"To establish cause for a procedural default, there must be something *external* to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted).  Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a

showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel.  Romero v. Collins, 961 F.2d 1181, 1183 (5th Cir. 1992).

In this federal proceeding, petitioner's counsel inexplicably fails to acknowledge that Subclaims 1, 2, and 4 were denied by the state courts on procedural grounds and therefore makes no effort to argue against imposition of the federal procedural bar.  Nevertheless, out of an abundance of caution, the Court will assume that, as she did in the state courts, she is arguing, at least implicitly, that the cause for the default was ineffective assistance of appellate counsel. However, even if so, that argument has no merit.

As the state court correctly noted, the United States Supreme Court established a two-pronged test for evaluating claims of ineffective assistance of counsel.  A petitioner seeking relief must demonstrate both that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 697 (1984).  Petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If the Court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance

is deficient if it falls below an objective standard of reasonableness." <u>Little v. Johnson</u>, 162 F.3d 855, 860 (5th Cir. 1998).   Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.   <u>See</u> <u>Strickland</u>, 466 U.S. at 689.   "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"   <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 371 (1993) (quoting <u>Strickland</u>, 466 U.S. at 690).   Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.   <u>See</u> <u>Crockett v. McCotter</u>, 796 F.2d 787, 791 (5th Cir. 1986); <u>Mattheson v. King</u>, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to a claim that appellate counsel was ineffective, petitioner must show a reasonable probability that he would have prevailed on appeal but for his counsel's deficient representation.   <u>Briseno v. Cockrell</u>, 274 F.3d 204, 207 (5th Cir. 2001); <u>see also</u> <u>Smith v. Robbins</u>, 528 U.S. 259, 286 (2000).   Therefore, petitioner must demonstrate a reasonable probability that, if appellate counsel's performance had not been deficient in the manner claimed, the appellate court would have vacated or reversed the trial court judgment based on the alleged error.   <u>Briseno</u>, 274 F.3d at 210.

Further, it must be remembered that appellate counsel "is not obligated to urge on appeal every nonfrivolous issue that might be raised (not even those requested by defendant)." <u>West v. Johnson</u>, 92 F.3d 1385, 1396 (5th Cir. 1996).   On the contrary, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." <u>Jones v.</u>

Barnes, 463 U.S. 745, 751-52 (1983).  Far from evidencing ineffectiveness, an appellate counsel's restraint often benefits his client because "a brief that raises every colorable issue runs the risk of burying good arguments ... in a verbal mound made up of strong and weak contentions."  Id. at 753. Rather, to prevail with respect to such a claim, petitioner must establish that the ignored issues were "clearly stronger" than the issues actually presented on appeal.  See, e.g., Diaz v. Quarterman, 228 Fed. App'x 417, 427 (5th Cir. 2007); see also Robbins, 528 U.S. at 288.

It is clear that appellate counsel was not ineffective for failing to raise these issues. On appeal, counsel asserted the following claims:  (1) the state systematically suppressed exculpatory evidence; (2) the trial court erred in refusing to quash the bill of information; (3) the Court of Appeal erred in granting a writ that overruled the trial court's ruling to allow certain responsive verdicts; (4) there was insufficient evidence to support the convictions; (5) a defense expert was wrongly denied the opportunity to interview the alleged victims and to review their taped interviews; and (6) the defense was wrongly denied access to the records concerning abuse allegations by F.S. in an unrelated case.[36]  While the appellate courts ultimately found those claims to be meritless, the instant claims would not have been any stronger.  On the contrary, they obviously were likewise meritless for the following reasons.

With respect to Subclaim 1, i.e. the use of the term "victim" at trial, counsel raised that issue at trial but his motion was denied.  Appellate counsel then elected not to challenge that ruling on appeal.  That decision is hardly surprising.  Petitioner's counsel identifies no mandatory authority which holds that the use of the term is impermissible.  This Court has likewise found no

---

[36]  State Rec., Vol. II of XIV, appellant's brief.

such mandatory authority; on the contrary, the Louisiana Supreme Court has found the argument unpersuasive.  State v. Lewis, 367 So.2d 1155, 1158 (La. 1979), overruled in part on other grounds, State v. Holden, 375 So.2d 1372 (La. 1979).  Where there is a lack of authority directly addressing an issue, appellate counsel is not ineffective for failing to raise the issue.  See, e.g., Higgins v. Cain, No. 11-30641, 2013 WL 3013866, at *5-7 (5th Cir. June 18, 2013).  Moreover, as the state points out, this claim is inherently weakened by the fact that petitioner was acquitted of the abuse of two of the three accusers referred to as "victims"; therefore, clearly, the jurors drew no adverse inference from the state's use of that term.

With respect to Subclaim 2, appellate counsel likewise was not ineffective for failing to raise a claim concerning the allegedly prejudicial comments or actions.  A contemporaneous objection at trial is normally required in order to preserve an error for appellate review.  La.C.Cr.P. art. 841(A).  In the instant case, there was no contemporaneous objection to these purported errors. Because there was no such objection, appellate counsel was precluded from asserting the purported errors on appeal and, if they nevertheless had been raised, the Court of Appeal would have rejected them as procedurally defaulted.

Moreover, even if the claim had been raised on appeal and considered on the merits, there still is no reasonable probability that it would have been successful.  As noted by the state court, most of the alleged improprieties are not even documented in the record.  Further, the jurors were specifically instructed:

> If during the course of this trial I've given any of you the impression that I have an opinion as to the guilt or innocence of the accused, you should disregard that opinion.  My conduct on the trial has been directed toward the attorneys the conduct of the trial and in

> no way indicates an opinion as to the guilt or innocence of the accused.[37]

"It is well settled that jurors are presumed to follow the trial court's instructions." <u>Rivas v. Thaler</u>, 432 Fed. App'x 395, 401 (5th Cir. 2011).

For all of these reasons, petitioner cannot show a reasonable probability that he would have prevailed on appeal if appellate counsel had raised the issues, and, therefore, he cannot show the appellate counsel was ineffective. <u>See</u> <u>Briseno</u>, 274 F.3d at 207; <u>see also</u> <u>Robbins</u>, 528 U.S. at 285; <u>Pinchon v. Terrell</u>, Civ. Action No. 11-615, 2012 WL 6569758, at *9 (E.D. La. Oct. 1, 2012), <u>adopted</u>, 2012 WL 6569802 (E.D. La. Dec. 17, 2012); <u>Weatherspoon v. Cain</u>, Civ. Action No. 10-4500, 2011 WL 4351397, at *34 (E.D. La. July 8, 2011), <u>adopted</u>, 2011 WL 4063611 (E.D. La. Sept. 13, 2011).

Lastly, with respect to Subclaim 4, i.e that the trial court "[o]rdered Petitioner to submit to an improperly conducted Polygraph test," it is nothing short of ludicrous to suggest that appellate counsel was ineffective for failing to raise that claim. As noted by the state court, that claim is based on a misrepresentation of what occurred. The trial court did not *order* petitioner to submit to a lie detector test. On the contrary, defense counsel *requested* that petitioner be allowed to take such a test in order to obtain a reduced sentence if he passed. The trial court simply granted that request but noted that the court, not defense counsel, would select who administered the test. Because the court never ordered petitioner to submit to any such test, and because the court was under no obligation whatsoever to allow or consider the results of a test administered by an expert

---

[37] State Rec., Vol. X of XIV, transcript of March 2, 2005, p. 56.

of whom the judge did not approve, petitioner's rights were not violated and there was no viable legal basis for appellate counsel to assert this claim on appeal.  Therefore, appellate counsel did not perform deficiently in failing to assert this meritless claim and obviously no prejudice resulted.

   For these reasons, this Court, like the state courts, finds no merit to petitioner's contention that appellate counsel was ineffective in the foregoing respects, and it is clear that a meritless ineffective assistance of counsel claim cannot serve as cause for a procedural default. Sherill v. Hargett, 184 F.3d 1172, 1176 (10th Cir. 1999); Turner v. Compoy, No. 91-55842, 1993 WL 425372, at *3 n.2 (9th Cir. Oct. 19, 1993); Arita v. Cain, Civ. Action No. 11-636, 2011 WL 4738666, at *11 (E.D. La. Aug. 25, 2011), adopted, 2011 WL 4738658 (E.D. La. Oct. 6, 2011), aff'd, 500 Fed. App'x 352 (5th Cir. 2012), cert. denied, 133 S.Ct. 1828 (2013); Bridges v. United States, No. 04 Civ. 2715, 2005 WL 1798084, at *2 (S.D.N.Y. Aug. 1, 2005); Davie v. Mitchell, 324 F. Supp. 2d 862, 872 (N.D. Ohio 2004); McLaughlin v. Carroll, 270 F. Supp. 2d 490, 516 (D. Del. 2003).  Because the purported ineffectiveness of counsel cannot serve as cause for the default of these claims, and because petitioner has established no other cause for default of the claims, the Court need not consider whether actual prejudice would result from the application of the procedural bar.  Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996) ("Absent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice.").

   In that petitioner has not met the "cause and prejudice" test, this Court should consider Subclaims 1, 2, and 4 only if the application of the procedural bar would result in a "fundamental miscarriage of justice."  However, in order to establish that there would be a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is

actually innocent of the charges against him.  Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted."  Finley, 243 F.3d at 220 (citations omitted).  Petitioner has made not made that showing, especially in light of the compelling and damning testimony of C.M.  Therefore, he has not established that any miscarriage of justice will result from the application of the procedural bar.

For these reasons, Subclaims 1, 2, and 4 are procedurally barred and cannot be considered by this Court.

With respect to Subclaim 3, the state argues that, although that subclaim is not procedurally barred, it does not warrant relief because it is meritless.  Again, the state is correct.

As noted, petitioner argues in Subclaim 3 that he was denied "the right to present a defense" when the trial court denied a defense motion requesting that their expert be allowed to examine the three alleged victims and denied petitioner access to the Kenner Police Department records concerning the allegations of abuse made by a fourth child, F.S.

With respect to the defense request to have the alleged victims examined by their expert, the trial court denied that pretrial motion on February 2, 2005.[38]  In denying the related writ application, the Louisiana Fifth Circuit Court of Appeal held:

> Pursuant to La. R.S. 15:241 the defendant is not entitled to compel the victim to submit to a psychological examination "unless the court finds, after a contradictory hearing with the state, that such an examination is necessary and appropriate and will not cause the victim undue emotional stress and is not being sought for the purpose of harassing or intimidating the victim."

---

[38]  State Rec., Supp. Vol. I of I, transcript of February 2, 2005; State Rec., Supp. Vol. I of I, minute entry dated February 2, 2005.

> After a contradictory hearing the trial court denied defendant's request.  We find no abuse of the trial court's discretion in that ruling.[39]

After trial, petitioner then reasserted the claim on direct appeal.  The Louisiana Fifth Circuit Court of Appeal, under law of the case, declined to reconsider the issue,[40] and the Louisiana Supreme Court denied the related writ application without assigning additional reasons.[41]

To the extent that petitioner is arguing that the state courts misapplied La. Rev. Stat. Ann. § 15:241 in denying his request for such an examination under state law, that is not a proper issue for this Court.  "[I]t is not the province of a federal *habeas* court to reexamine state-court determinations on state-law questions."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); see also Charles v. Thaler, 629 F.3d 494, 500-01 (5th Cir. 2011) ("Under § 2254, federal habeas courts sit to review state court misapplications of federal law.  A federal court lacks authority to rule that a state court incorrectly interpreted its own law.  When, as here, a state court's legal conclusions are affirmed by the highest court in that state, those conclusions *are* state law."); Molo v. Johnson, 207 F.3d 773, 776 n.9 (5th Cir. 2000) ("Federal *habeas* review does not extend to state court conclusions of state law."); Hogue v. Johnson, 131 F.3d 466, 506 (5th Cir. 1997) (a disagreement as to state law is not cognizable on federal *habeas*).  Simply put, a federal *habeas* court does "not sit as a 'super' state supreme court" to review alleged errors of state law.  Smith v. McCotter, 786 F.2d 697, 700

---

[39] State v. Lande, No. 05-K-179 (La. App. 5th Cir. Feb. 18, 2005); State Rec., Supp. Vol. I of I.

[40] Lande, 934 So.2d at 299; State Rec., Vol. II of XIV.

[41] State v. Lande, 954 So.2d 154 (La. 2007) (No. 2006-K-1894); State Rec., Vol. III of XIV.

(5th Cir. 1986); see also Dickerson v. Guste, 932 F.2d 1142, 1145 (5th Cir. 1991). Rather, federal *habeas corpus* relief may be granted "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2254(a). Accordingly, mere violations of state law will not suffice. See Engle v. Isaac, 456 U.S. 107, 119 (1983).

    To the extent that petitioner is arguing that the denial of such an examination violated clearly established *federal* law, he has not made the requisite showing. Because the state courts denied the claim on the merits, federal *habeas* relief is warranted only if petitioner shows that the state court's decision rejecting his claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court of the United States*." 28 U.S.C. § 2254(d)(1) (emphasis added). In this case, petitioner does not identify a single United States Supreme Court ruling which holds that a judge, as a matter of federal law, must allow a defense expert to examine a minor victim of a sex crime, and this Court is aware of no such ruling. Where, as here, the jurisprudence of the United States Supreme Court does not clearly support a petitioner's claim, it cannot be said that a state court ruling denying the claim impermissibly ran afoul of "clearly established Federal law" for purposes of § 2254(d)(1). See Wright v. Van Patten, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, let alone one in [petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law. Under the explicit terms of § 2254(d)(1), therefore, relief is unauthorized."); Gilson v. Leblanc, Civ. Action No. 08-4833, 2009 WL 2046166, at *3 (E.D. La. July 14, 2009).

With respect to access to the Kenner Police Department records concerning F.S., it must be noted that petitioner was not the alleged abuser of F.S.[42] and the purported abuse in that case is totally unrelated to the charges against petitioner.  In light of the fact that the cases were unrelated and factually dissimilar, the trial court denied defense access to the records, holding:

> The defense filed a Motion for In Camera Examination by Court of Potential Brady Material.  The Court took the matter under advisement to view the material to determine if the discovery requested qualifies as Brady material.
> ....
> Defendant seeks any material that the State may possess of prior allegations of sexual abuse made by or on behalf of [F.S.] who is the stepsister of the alleged victims.  The State submitted to this Court for inspection a City of Kenner police report in which [F.S.] made an allegation of sexual abuse.  While the victims may be stepsisters, this Court finds that the two incidents are entirely different and involve different patterns of abuse.  After reviewing both police reports, this Court finds that the two cases are so dissimilar that the defense would gain no benefit from the discovery, because the discovery contains no material which may be exculpatory.  With the absence of Brady material in the discovery, this Court finds that the defense is not entitled to the requested discovery.[43]

In denying the related writ application, the Louisiana Fifth Circuit Court of Appeal held:  "On the showing made we find no reason to exercise our supervisory jurisdiction."[44]

After trial, petitioner then reasserted the claim on direct appeal.  The Louisiana Fifth Circuit Court of Appeal denied relief, holding:

---

[42]  See State Rec., Vol. VIII of XIV, transcript of February 24, 2005, p. 56.

[43]  State Rec., Supp. Vol. I of I, Order dated May 11, 2004.

[44]  State v. Lande, No. 04-K-685 (La. App. 5th Cir. June 24, 2004); State Rec., Supp. Vol. I of I.

In Lande's sixth assignment of error he asserts that he was denied due process of law his rights under the Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States and Article 1, Sections 13 and 16 of the Louisiana State Constitution of 1974 when the trial court failed to grant him access to the criminal court record of the alleged victim's stepsister and when this Court failed to grant a writ of review.

By this assignment of error, Lande reurges an issue raised in his previous writ application, No. 04-K-685, which was denied by this Court. Lande admits his argument has not changed since the writ application but notes that the evidence at trial confirmed all his stated reasons for needing access to the criminal court record of a sexual abuse case involving C.M.'s stepsister, F.S. Lande incorporates his writ application as his argument but does not specify or explain what evidence at trial supports his argument.

As stated in assignment of error number one, Lande was given open file discovery. A few months later and after the State filed written responses to the motion for bill of particulars at defendant's request, defendant filed a motion for an in-camera examination of potential Brady material. In his motion, Lande stated outstanding discovery issues had been previously addressed at a pre-trial conference in chambers and all parties agreed to resolve the issues through an in-camera inspection. Lande outlined the discovery he sought, which consisted of any investigation into the victims' mother and all information relating to the alleged sexual abuse of the victims' stepsister, F.S. The trial court held a hearing on the motion and took the matter under advisement.

On May 11, 2004, the trial court issued an order finding Lande was not entitled to information relating to the sexual abuse of F.S. because the information sought did not contain any Brady material. The trial court explained the sexual abuse of F.S. was different than the present allegations of sexual abuse and involved a different pattern of abuse. Defendant sought a writ of review from this Court, which was denied in a disposition stating, "On the showing made we find no reason to exercise our supervisory jurisdiction."[FN51]

> [FN51] Because this Court clearly did not rule on the merits of the writ application, the theory of law of the case is inapplicable.

In his writ application, Lande argued the trial court erred in ruling information pertaining to the sexual abuse of F.S., contained in a police report, was not exculpatory.  Defendant maintained the sexual abuse of the victims' stepsister exposed the victims to the idea of sexual abuse and was a catalyst in the victims' fabrication of allegations of sexual abuse against him.  Defendant further asserted the information was important because the same detective who investigated the stepsister's allegations of sexual abuse also investigated the victims' allegations of abuse.  Lande alleged that, without the police report containing the stepsister's allegations of sexual abuse, he would be unable to show the jury that the victims had concocted the allegations after being exposed to the idea of sexual abuse in an effort to please their father and/or punish defendant for doing drugs with their mother.

    ... The trial court reviewed the police report in camera and determined it did not contain <u>Brady</u> material. A copy of the police report at issue was attached to the writ application and is not contained in the appellate record.  There is no indication defendant requested the police report be sealed so that it could be submitted to this Court for review.  Thus, we cannot independently review the document at issue to determine whether it contains <u>Brady</u> material.[45]

The Louisiana Supreme Court then denied the related writ application without assigning additional reasons.[46]

Despite the best efforts of petitioner's counsel to characterize this as a <u>Brady</u> claim, it is not.  The United States Supreme Court has held:

    A <u>Brady</u> violation occurs when the government fails to disclose evidence materially favorable to the accused.  This Court has held that the <u>Brady</u> duty extends to impeachment evidence as well as exculpatory evidence, and <u>Brady</u> suppression occurs when the government fails to turn over even evidence that is known only to police investigators and not to the prosecutor.  Such evidence is material if there is a reasonable probability that, had the evidence

---

[45]  <u>Lande</u>, 934 So.2d at 299; State Rec., Vol. II of XIV.

[46]  <u>State v. Lande</u>, 954 So.2d 154 (La. 2007) (No. 2006-K-1894); State Rec., Vol. III of XIV.

> been disclosed to the defense, the result of the proceeding would have
> been different, although a showing of materiality does not require
> demonstration by a preponderance that disclosure of the suppressed
> evidence would have resulted ultimately in the defendant's acquittal.
> The reversal of a conviction is required upon a showing that the
> favorable evidence could reasonably be taken to put the whole case
> in such a different light as to undermine confidence in the verdict.

Youngblood v. West Virginia, 547 U.S. 867, 869-70 (2006) (per curiam) (internal citations and

quotation marks omitted).  Therefore, to prevail on a Brady claim, a petitioner "must show that (1)

the state withheld evidence, (2) the evidence was favorable to the accused, and (3) the evidence is

material to guilt or punishment."  DiLosa v. Cain, 279 F.3d 259, 262-63 (5th Cir. 2002).

Here, the state courts found that the alleged abuse of F.S. was unrelated and factually

dissimilar to the abuse charged in the instant case.  There is no reason to believe that the records

concerning that unrelated incident in any way exculpated petitioner of the charges in this case or that

the records could have impeached any witness at trial.  In fact, petitioner's counsel does not even

make that argument.  Rather, she opines that F.S.'s files would have been helpful to the defense in

preparing to cross-examine the state's witnesses at trial.  However, Brady requires production of only

"material" evidence, not merely helpful evidence.  See, e.g., Kyles v. Whitley, 514 U.S. 419, 436-37

(1995) ("[T]he Constitution is not violated every time the government fails or chooses not to

disclose evidence that might prove helpful to the defense.").  F.S.'s files simply do not qualify as

"material."

In reality, this claim is nothing more than a discovery dispute.  As such, it does not

warrant federal relief.  As the United States Supreme Court has noted:  "There is no general

constitutional right to discovery in a criminal case, and Brady did not create one; as the Court wrote

recently, 'the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded ....'" Weatherford v. Bursey, 429 U.S. 545, 559 (1977) (quoting Wardius v. Oregon, 412 U.S. 470, 474 (1973)).

        For all of the foregoing reasons, he is not entitled to federal *habeas corpus* relief with respect to Subclaim 3.

## B.  Prejudicial Evidence

        As his second claim, petitioner asserts:

> Petitioner was denied his right to due process of law under the Fifth and Fourteenth Amendments to the United States Constitution, when the prosecution failed to give notice of its intent to introduce evidence of highly prejudicial and speculative other crimes evidence against Petitioner at trial.  The state elicited testimony tending to show that Petitioner was a racist, had a propensity for violence, and used and provided drugs to others, in violation of F.R.E. art. 404(B).[47]

        In the state post-conviction proceedings, the state district court rejected the claim, holding:

>      Petitioner claims that he was prejudiced by lack of notice of State's intent to introduce evidence of petitioner's prior bad acts. Defense received notice of the petitioner's bad acts through discovery from the state, including information in police reports and petitioner's prior conviction.
>      As the state points out in its response, Prieur notice is not required for *res gestae* evidence.  Also, when the defendant opens the door, to evidence of other bad acts, Prieur notice is not required.  Under LSA-C.E. art 404(B)(1), evidence of other crimes may be admissible for other purposes such as motive[,] opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution shall provide reasonable notice prior to p [sic] trial.  Importantly, even

---

[47] Rec. Doc. 1-2, p. 12.

when required, violations of <u>Prieur</u> notice do not require reversal, as a defendant must show prejudice before he can complain of a violation. <u>State v. Ridgley</u>, 08-675 (La. App. 5 Cir. 1/13/09), 7 So.3d 689, 698.

Petitioner claims that he was prejudiced when the state elicited testimony from child-complainant N.M. that she claimed petitioner hit and spit on her. Defense counsel objected, and the court denied the objection as *res gestae*. Other witnesses also testified that petitioner was violent toward N.M. As the state points out, this evidence goes to the delayed reporting of the incidents, and is therefore *res gestae*.

Petitioner claims that he was prejudiced by the testimony of N.M.'s mother, which included racist remarks made by petitioner. He also claims he was prejudiced by evidence that he had used drugs, and supplied the children's mother with drugs, and by testimony of threats made to the children's mother by petitioner concerning not proceeding with the case.

In defense's case-in-chief, petitioner admitted to using drugs. As the state points out, petitioner's defense at trial was founded on and perpetuated by evidence of his bad acts. Petitioner's defense was that the children fabricated these charges due to their hatred of the petitioner, based on his bad behavior.

Petitioner fails to show how he was prejudiced by this testimony, as it does not make him more likely to commit aggravated incest. Furthermore, petitioner does not prove prejudice, as evidenced by the verdicts. The jury obviously considered and weighed the pertinent evidence in the case and in each count, and only convicted petitioner of two counts, acquitting him of three. The jury apparently was not influenced by evidence of petitioner's bad acts. Because Petitioner cannot show how he was [sic] suffered prejudice due to lack of notice of bad acts, he is not entitled to relief, and this claim will be denied.[48]

---

[48]  State Rec., Vol. IV of XIV, Order dated July 12, 2010, pp. 3-4.

The Louisiana Fifth Circuit Court of Appeal found no error in that judgment,[49] and the Louisiana Supreme Court denied relief without assigning reasons.[50]

The United States Fifth Circuit Court of Appeals has held:  "In habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law."  Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998).  Therefore, to the extent that petitioner is arguing that the state courts misapplied state evidence law, his claim simply is not reviewable in this federal proceeding.

To the extent that petitioner is asserting a federal claim, he fares no better.  Even if petitioner could show that the evidence was in fact improperly admitted, which is questionable  at best,[51] federal *habeas* relief still would not be warranted.  The United States Fifth Circuit Court of Appeals has explained:

> We will not grant habeas relief for errors in a trial court's evidentiary rulings unless those errors result in a "denial of fundamental fairness" under the Due Process Clause.   The erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction.

---

[49]   Lande v. Cooper, No. 10-KH-768 (La. App. 5th Cir. Oct. 5, 2010); State Rec., Vol. IV of XIV.

[50]   State v. Lande, 954 So.2d 154 (La. 2007) (No. 2006-K-1894); State Rec., Vol. III of XIV.

[51]   As the state courts noted, most of the challenged evidence was properly admitted  under the *res gestae* doctrine.  See, e.g., State v. Senegal, 19 So.3d 623, 627 (La. App. 3rd Cir. 2009); State v. Clements, 519 So.2d 236, 238 (La. App. 5th Cir. 1988); State v. Johnson, 440 So.2d 838, 842 (La. App. 2nd Cir. 1983).

Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998) (citations omitted); see also Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998) ("[O]nly when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted.").

Here, it cannot be said that the evidence played a crucial, critical, and highly significant role in petitioner's conviction. It appears that petitioner is arguing that the evidence was intended to portray him as a bad man and inflame the passions of the jury. However, even if that was the state's intention, it obviously did not work because, as the state court noted, petitioner was acquitted on the majority of the counts against him. Therefore, the reasonable conclusion is that his convictions on only the two remaining counts resulted from the jury's discerning consideration and weighing of the evidence (including the compelling testimony of the victimized child) rather than on any speculative generalized animosity toward the petitioner based on the challenged testimony. Accordingly, he simply cannot demonstrate that the admission of the challenged evidence resulted in a denial of fundamental fairness.[52]

In summary, petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, applying the AEDPA's deferential standard, this Court should likewise reject his evidentiary claim.

---

[52] Moreover, if the state was in fact offering the evidence in an attempt to portray petitioner as a bad person, that tactic played directly into the hands of the defense. As noted by the state court and as explained later in this opinion, the theory of the defense was that the alleged victims fabricated the allegations of sexual abuse to retaliate against the petitioner because he was a bad person who came into their lives and destroyed their happy home.

- 34 -

<u>C.  Ineffective Assistance of Counsel</u>

As his third claim, petitioner asserts:

Petitioner was denied his right to effective assistance of counsel as provided by the Sixth and Fourteenth Amendments of the United States Constitution in that trial and appellate counsels' numerous incidents of ineffectiveness, most notably the failure to prepare for trial, failure to request necessary continuances and make proper objections, failure to introduce exculpatory information, failure to object to prejudicial 404(b) information at trial, and appellate counsel's failure to raise valid appeal issues, all led to a manifest absence of counsel.

After an evidentiary hearing, the state district court denied petitioner's ineffective

assistance of counsel claims on the merits.  The court held:

As I understand it, Strickland requires me to look to see if Counsel was ineffective; and because of that, the second prong is, if ineffective, the case or the outcome would be in question, based on that.

So, the first thing I have to do, Mr. Lande, is I have to evaluate the testimony that I heard, from both Attorneys and multiple witnesses.  And let me get to the fact that, when it comes to trial strategy, and it was pretty eye-opening when I listened to Mr. Landry [defense counsel] make his argument about trial strategy.  Where he knew that if they asked for a continuance, even though they already had the tapes, they just hadn't gotten the transcripts, he knew that by going forward, he had a built-in appellate issue that he was going to argue, even though he admitted on the record that he was prepared for it because they had seen the tapes, they understood all of the problems, and that if they had gotten the continuance, they wouldn't be able to raise that appellate issue.  So which is why they went forward knowing that if you were convicted, they could argue that on appeal; he even admitted that, under questioning, You got me. Right?  That he knew that it wasn't really a legitimate issue because they weren't unprepared, it was just the way he phrased it with the argument, which goes to show you that that's not a bad lawyer, that's a smart lawyer, and that he employed his strategy by getting two bites at the apple for you.

As for Mr. Panzeca [defense counsel], you were acquitted of three of five of the counts. And as Mr. Panzeca said on numerous occasions, he may not have done everything that you wanted him to, but that's why you hire a lawyer. A lawyer is going to make decisions that they feel is best, because that's what they do. It's like hiring a plumber, you wouldn't tell the plumber how to fix the pipe, because you're not a plumber. Okay? So he admitted that there were certain things that he tried to do, and then one of the witnesses with the younger child, everything he tried to do didn't go too well. Okay?

As for the photographs, he explained that, and Mr. Landry explained that also as to why they didn't use it, that they didn't want it to seem or come across, you know, to send the wrong message to the jury when they were deliberating.

All of those things indicate to the Court that they weren't ineffective for you, that they did everything that were supposed to do, because they were making objections and things to preserve those issues for appeal. Now, they admitted that they didn't want you to take the stand, and that is your right. I tell everybody that all the time. That's your right. And you took the stand, and their strategy was to employ that they were going to show, because they weren't going to try to hide it, when you took the stand, your conviction was going to come out. So their strategy was to show that these things happened, because they were going to attack your ex-wife based on some of the other things and the other issues.

So all of that is what the Court considers to be strategy. Because it is a strategy that you asked to employ, that you believed that they were lying, and he made that argument and was able to convince the jury on three out of five counts. It's just – you know, in some instances, the jury evaluated all of it and rejected your argument on two of the counts.

So based on the cumulation and – and it is true, when I was an Assistant D.A., the first question I asked of a defense witness, all the time, was, How many times have you met with the lawyer in this case? And normally my indication to that was, and it's a trial strategy all the way, some lawyers will meet with a witness ten times, and the D.A. will stand up, and the D.A. will argue, Well that's why the witness came across so well because they were coached, ten times, by their lawyer, Okay? So, all of the things that a lawyer does, is all part of their experience and what they bring to the table.

Now I know he didn't do everything you wanted him to do, but he did the best that he could do, strategy-wise, with what he had. Both the lawyers admitted that they were prepared for this case, there

wasn't anything that came at them that they didn't already know was going to come. Okay? Like I said, the transcripts came up, later, the notes. But the notes are nothing more than – if you have the police report, the notes are mainly contained as part of the report. So everyone knows exactly what's coming. It's not like there's a smoking gun.

So, it's the Court's conclusion that I don't find that either Counsel were ineffective, and I believe based on that I don't have to go to prong number 2; but I would go to prong number 2 because everything that came out at trial, based on what they tried to do, they could have asked, they could have gotten the continuance, but it wouldn't have changed all of the facts that were going to come out, presented by the State, it was the same thing. So, as I said, that was also part of strategy.

So, the Court's going to deny your claim for relief for ineffective assistance of counsel.[53]

The Louisiana Fifth Circuit Court of Appeal then rejected petitioner's related writ application,

holding:

[O]n April 28-29, 2011, the district court held an evidentiary hearing on relator's claims of ineffective assistance of counsel as ordered by this Court. Several witnesses testified at this hearing, including both of relator's attorneys, as well as his parents and himself. Following the hearing, the district court denied relator's claim of ineffective assistance of counsel, finding first that neither attorney was ineffective, that counsel's actions were a part of trial strategy, and that relator was not prejudiced by counsel's performance.

By the present application, relator now seeks review of this ruling on several grounds. A review of the application, attachments thereto including the hearing transcript, and all applicable law, we find no error in the trial court's ruling failing to find counsel's performance defective or that relator was prejudiced thereby.[54]

---

[53] State Rec., Vol. XIII of XIV, transcript of April 29, 2011, pp. 32-36.

[54] Lande v. Cooper, No. 11-KH-695 (La. App. 5th Cir. July 26, 2011); State Rec., Vol. IV of XIV.

The Louisiana Supreme Court then likewise denied relief without assigning additional reasons.[55]

Because the state courts denied petitioner's ineffective assistance of counsel claims on the merits, and because such claims present a mixed question of law and fact, this Court must defer to the state court decision denying relief unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court has explained that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable.  This is different from asking whether defense counsel's performance fell below Strickland's standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law.  A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.  Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).  And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  Ibid.  "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."  Knowles v. Mirzayance, 556

---

[55]  Lande v. Cooper, 85 So.3d 87 (La. 2012) (No. 2011-KP-1857); State Rec., Vol. XIV of XIV.

U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009)
(internal quotation marks omitted).

Harrington v. Richter, 131 S.Ct. 770, 785-86 (2011) (citation omitted).  The Supreme Court then

explained:

> Surmounting Strickland's high bar is never an easy task.  An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve.  Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence.  The question is whether an attorney's representation amounted to incompetence under prevailing professional norms,  not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of Strickland was unreasonable under 2254(d) is all the more difficult.  *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.*  The Strickland standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  *When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

Id. at 788 (citations omitted; emphasis added).  For the following reasons, the Court finds that, under

those stringently deferential standards, it simply cannot be said that relief is warranted in the instant

case with respect to petitioner's ineffective assistance of counsel claims.

Previously in this opinion, this Court set forth the general law applicable to ineffective assistance of *appellate* counsel claims.[56]  That same law also applies to ineffective assistance of *trial* counsel claims, with one slight variation.  Specifically, in order to prove prejudice with respect to trial counsel, petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial, as opposed to the appeal, would have been different.  See Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett v. McCotter, 796 F.2d 787, 793 (5th Cir. 1986).

Turning to petitioner's specific ineffective assistance of counsel claims, the Court notes that petitioner has divided his claims into five broad categories.

The first category challenges the adequacy of the pretrial preparation.  Specifically, petitioner argues that one of his attorneys was too gravely ill to properly prepare for trial.  At the post-conviction evidentiary hearing, the attorney conceded that he was ill but disputed the contention that the illness adversely affected his performance.  In any event, what petitioner seemingly fails to understand is that, *even if* counsel's illness made him "less effective"[57] in some general sense, that alone would not warrant relief.  Rather, petitioner must (1) identify *specific* errors or omissions that resulted from the attorney's illness and (2) show that there is a reasonable probability that, but for

---

[56]  See pages 18-19, *supra*.

[57]  Rec. Doc. 1-2, p. 16.

those specific errors or omissions, the outcome of the proceeding would have been different.  <u>See, e.g.</u>, <u>United States v. Eyman</u>, 313 F.3d 741, 743 (2nd Cir. 2002).  Here, petitioner's claim is remarkably wanting in terms of specifics and, even when specifics are offered, no prejudice is shown.

For example, petitioner argues that counsel failed to ensure that defense witnesses were adequately prepared to testify; however, that claim fails because he has not shown that better preparation would have in fact resulted in additional testimony beneficial to the defense.  <u>See, e.g.</u>, <u>Carty v. Quarterman</u>, 345 Fed. App'x 897, 903 (5th Cir. 2009) ("[Petitioner] has failed to identify any testimony or information that trial counsel should have elicited from [the witness] that would have been admissible, relevant, and non-cumulative."); <u>Coble v. Quarterman</u>, 496 F.3d 430, 436 (5th Cir. 2007) ("[E]ven assuming counsel failed to fully prepare these witnesses, [petitioner] only argues that these witnesses would have been 'more effective' if they had been better prepared, which does not come close to suggesting that 'but for counsel's errors, the result of the proceeding would have been different.'").

He also argues that counsel failed to conduct any "independent investigation." However, a petitioner asserting a claim for inadequate investigation bears the burden to provide factual support as to what further investigation would have revealed.  <u>See</u> <u>Moawad v. Johnson</u>, 143 F.3d 942, 948 (5th Cir. 1998); <u>see also</u> <u>Trottie v. Stephens</u>, No. 11-70028, 2013 WL 2918313, at *5 (5th Cir. June 14, 2013) ("[A] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."); <u>Brown v. Dretke</u>, 419 F.3d 365, 375 (5th Cir. 2005); <u>Davis</u>

v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008). In the instant case, petitioner has brought forth no evidence establishing that there is a reasonable probability that further investigation would have revealed any information which, if it had been discovered and presented at trial, would have resulted in a different outcome at trial.  Without such evidence, he cannot make the required showing that he was prejudiced by the allegedly inadequate investigation and his claim necessarily fails.  Everett v. Louisiana, Civ. Action No. 08-4745, 2009 WL 1971370, at *5 (E.D. La. July 7, 2009); see also Twillie v. Rader, Civ. Action No. 12-1421, 2012 WL 3990392, at *5 (E.D. La. Aug.14, 2012), adopted, 2012 WL 3990490 (E.D. La. Sept. 10, 2012).

He further complains that counsel did not call all potential witnesses.  However, as the United States Fifth Circuit Court of Appeals has explained:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain.  For this reason, we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense.  This requirement applies to both uncalled lay and expert witnesses.

Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets omitted); see also Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the

content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

Here, petitioner has produced no evidence whatsoever, such as affidavits from uncalled witnesses, demonstrating that they would have testified in a manner beneficial to the defense. Therefore, he clearly has not met his burden with respect to this claim. See, e.g., United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); Buniff v. Cain, Civ. Action No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); Combs v. United States, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); Harris v. Director, TDCJ-CID, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

Petitioner also complains that counsel performed inadequately when conducting the cross-examination of C.M. However, it is clear that "[t]he decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential

exercise of professional judgment." <u>Ford v. Cockrell</u>, 315 F. Supp. 2d 831, 859 (W.D. Tex.2004),

<u>aff'd</u>, 135 Fed. App'x 769 (5th Cir. 2005); <u>see also</u> <u>Lewis v. Cain</u>, Civ. Action No. 09-2848, 2009

WL 3367055, at *8 (E.D. La. Oct. 16, 2009), <u>aff'd</u>, 444 Fed. App'x 835 (2011); <u>Williams v. Cain</u>,

Civ. Action Nos. 06-0224 and 06-0344, 2009 WL 1269282, at *11 (E.D. La. May 7, 2009), <u>aff'd</u>,

359 Fed. App'x 462 (5th Cir. 2009), <u>cert. denied</u>, 130 S. Ct. 2107 (2010); <u>Packnett v. Cain</u>, Civ.

Action No. 06-5973, 2008 WL 148486, at * 11 (E.D. La. Jan. 10, 2008); <u>Parker v. Cain</u>, 445 F.

Supp. 2d 685, 710 (E.D. La. 2006). The United States Supreme Court has cautioned courts not to

second-guess counsel's decisions on such tactical matters through the distorting lens of hindsight;

rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range

of reasonable assistance and, under the circumstances, might be considered sound trial strategy.

<u>Strickland</u>, 466 U.S. at 689.

        In the instant case, trial counsel testified at the post-conviction evidentiary hearing

that the cross-examination of C.M. was going poorly and producing sympathetic displays from

jurors.  He testified that he therefore decided to cut it short in order to prevent greater damage.[58] The

Court has no grounds on which to second-guess what would appear to be a very wise tactical

decision.  Obviously, vigorously cross-examining a child, especially about something as traumatic

as alleged sexual abuse, is a tactic fraught with danger and can easily backfire. <u>See, e.g.</u>, <u>Sharp v.

Kelly</u>, Civ. Action No. 1:08CV79, 2010 WL 2539647, at *12 (N.D. Miss. May 28, 2010)

("Apparently [petitioner] desired a very aggressive cross-examination.  His attorney clearly

understood what [petitioner] apparently does not – Badgering a child witness is a fool's tactic."),

---

[58]  State Rec., Vol. XIII of XIV, transcript of April 28, 2011, pp. 9-11 and 20.

adopted, 2010 WL 2539610 (N.D. Miss. June 16, 2010); see also Kelly v. Ylst, No. 88-5954, 1990

WL 42235, at *1 (9th Cir. Apr. 11, 1990).  Accordingly, this claim fails.

In summary, petitioner's purely speculative and unsupported attempt to second-guess

counsels' pretrial preparation and strategy is wholly inadequate to meet his burden of proof to show

either that his counsel performed deficiently or that prejudice resulted.

The second category challenges counsels' failure to request a continuance to review

the belated production of Jefferson Parish Child Abuse Protocols, detective notes, and related

materials.[59]  Petitioner opines that a continuance was necessary in order for the defense to properly

review the materials and "rework their defense strategy."[60]  However, a decision on whether or not

to seek a continuance is likewise inherently one of trial strategy and, as such, is generally accorded

great deference.  See, e.g., McVean v. United States, 88 Fed. App'x 847, 849 (6th Cir. 2004); Moore

v. Casperson, 345 F.3d 474, 490 (7th Cir. 2003); Brooks v. Cain, Civ. Action No. 06-1869, 2009

WL 3088323, at *13 (E.D. La. Sept. 21, 2009).  Moreover, at the evidentiary hearing, defense

counsel explained that no continuance was requested because none was needed, would not have

changed the outcome, and would have undercut the ability to raise the belated production as an issue

on appeal.[61]  Again, this Court has no sound basis to second-guess that determination, and, in any

---

[59]  Rec. Doc. 1-2, p. 22.

[60]  Rec. Doc. 1-2, p. 22.

[61]  State Rec., Vol. XIII of XIV, transcript of April 28, 2011, pp. 14 and 39-42.

event, petitioner has made no showing whatsoever that there is a reasonable probability that the result of the proceeding would have been different if a continuance had been requested.[62]

The third category challenges counsels' failure to introduce testimony, photographs, and videos indicating that petitioner and the alleged victims were a happy family sharing a loving relationship. However, at the evidentiary hearing, counsel explained that the decision to forgo such evidence was strategic in nature. Concerning the testimony, counsel explained that he elected not to have the witness in question, Kenny LeBlanc, testify concerning the relationship because "[t]here were other witnesses who I thought would have made better witnesses of that fact" and that he wanted to avoid "overkill" with various "witnesses saying the same thing, over and over again."[63] He further explained that he chose not to introduce photographs or videotapes of the children in bathing suits and engaging in horseplay because "the jury might take them the wrong way" and result in the evidence being harmful rather than helpful.[64] Regarding the decision not to introduce a wedding video featuring the children, he explained that he simply did not want the jury focusing on videos of the children during deliberation.[65]

Obviously, those are all perfectly legitimate and reasonable strategic choices. The presentation of cumulative testimony or testimony from questionable sources can alienate a jury.

---

[62] In the heading of this claim, petitioner's *habeas* counsel also alleges that trial counsel failed to lodge necessary objections. Rec. Doc. 1-2, p. 22. However, that appears to be a typographical error in that the ensuing discussion makes no reference to the failure to lodge objections.

[63] State Rec., Vol. XIII of XIV, transcript of April 28, 2011, p. 16.

[64] State Rec., Vol. XIII of XIV, transcript of April 28, 2011, p. 23.

[65] State Rec., Vol. XIII of XIV, transcript of April 28, 2011, p. 24.

Further, it can hardly be doubted that the pictures and videos are double-edged in nature.  *Habeas* counsel essentially argues that such evidence could cause the jury to view with suspicion the accusations of sexual abuse.  However, it is equally possible that such evidence could instead have had a negative effect, in that contrasting pictures and videos of innocent children in happy times with their excruciating allegations of sexual abuse at the hands of their stepfather could make the allegations seem even more heinous.

The bottom line is this:  these are inherently matters of trial strategy and therefore should not be casually second-guessed.  On the contrary, as already noted, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy.  Strickland, 466 U.S. at 689.  Petitioner has failed to meet his burden to demonstrate that the general presumption should not be employed in this case.

The fourth category challenges counsels' failure to object to the introduction of prejudicial evidence of testimony concerning petitioner's violence, drug use, and threats.  However, again, this was a strategic choice.  In fact, defense counsel *wanted* such information to be placed before the jury, in that the theory of the defense was that the alleged victims were falsely accusing petitioner as a way to extract revenge on him for destroying their happy home.  For example, at the evidentiary hearing, one of petitioner's trial attorneys explained:

> Well, we felt like the – the young ladies involved in this case were making this stuff up.  And we thought – and our theory of the case was essentially that Phillip had introduced their mother to drugs, and this sort of thing, and that what had initially started out as a rather happy situation for all the people involved, rapidly deteriorated after that.  And they lost their home, you know, there was all sort of

> trouble and strife in the marriage, and we felt like they were sort of taking it out on him; and that this was mostly vindictiveness, and we attempted to show that in our trial strategy.  So, I mean, that's sort of the theory of the case, that the girls had made this up.[66]

He later reiterated:

> The theory of our case is that Phillip had done bad things, and he had made these girls mad; and that was the whole motive for their telling these stories about him. ... [W]e talked about it with Phillip, we talked about it with his daddy, Jerome; it was a strategic decision to own it, rather than try to hide it, and then have it be some big bombshell for the jury.  So we tried to get out in front on the issue, own it, make it part of our narrative that we were trying to present to the jury, and try to use it as a way to show, Look the girls had motive to make up this story.  That was the theory of the case.[67]

This Court cannot say that this theory of defense was unwise; on the contrary, it seems to be a reasonable way to make the best of bad facts.  Moreover, while petitioner's *habeas* counsel tries to disparage trial counsels' choices, her professional disagreement with their tactics and the fact that she might have handled the case differently are of no moment.  As the Supreme Court noted:  "There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way."  <u>Strickland</u>, 466 U.S. at 689.

In summary, petitioner has failed to demonstrate that the state court decision rejecting his ineffective assistance of trial counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United

---

[66] State Rec., Vol. XIII of XIV, transcript of April 28, 2011, p. 37.

[67] State Rec., Vol. XIII of XIV, transcript of April 28, 2011, p. 50.

States.  Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

Lastly, in his fifth category, petitioner challenges the effectiveness of his appellate counsel.  Specifically, petitioner argues that appellate counsel should have raised on appeal the issues concerning the trial court's "order" that petitioner submit to a polygraph test prior to sentencing, the denial of the defense request to prohibit the term "victim" at trial, and the trial judge's allegedly inappropriate comments and behavior.  This Court has already addressed those claims in its discussion of whether appellate counsel's alleged ineffectiveness could serve as cause for petitioner's procedurally barred claims.  For the reasons previously explained in detail, petitioner's contention that appellate counsel was ineffective in those respects is clearly meritless.[68]  No further discussion of those claims is necessary.

## D.  Brady Violation

Lastly, petitioner asserts:

Petitioner was denied, without hearing, his right to a fair trial and his
right to due process of law, under the Fifth, Sixth, and Fourteenth
Amendments to the United States Constitution, when exculpatory

---

[68] See pages 18-23, *supra*.  This Court notes that the state also argues that petitioner claim that his appellate counsel was ineffective is at least partially unexhausted and therefore procedurally barred.  However, this Court pretermits consideration of those arguments.  A federal court has the authority to deny *habeas* claims on the merits regardless of whether the petitioner exhausted his state court remedies and whether exhaustion is waived by the state.  28 U.S.C. § 2254(b)(2); Jones v. Jones, 163 F.3d 285, 299 (5th Cir. 1998); Woods v. Cain, Civ. Action No. 06-2032, 2008 WL 2067002, at *8 n.8 (E.D. La. May 13, 2008).  Likewise, a federal court need not decide whether a claim is procedurally barred if the claim clearly fails on the merits.  Glover v. Hargett, 56 F.3d 682, 684 (5th Cir. 1995); Wiley v. Puckett, 969 F.2d 86, 104 (5th Cir. 1992); Corzo v. Murphy, Civ. Action No. 07-7409, 2008 WL 3347394, at *1 n.5 (E.D. La. July 30, 2008); Lee v. Cain, Civ. Action No. 06-9669, 2007 WL 2751210, at *9 (E.D. La. Sept. 18, 2007).

material was withheld from the defense, including the police file relative to F.S., case notes, and protocols, in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and progeny.[69]

On direct appeal, petitioner presented a multifaceted <u>Brady</u> claim.  The Louisiana Fifth Circuit Court of Appeal denied relief, holding:

> Lande argues the State withheld exculpatory evidence despite his repeated requests for such evidence.  He delineates seven items he alleges were <u>Brady</u>[FN36] material that the State failed to disclose in a timely fashion: (1) the Jefferson Parish Child Sexual Abuse protocol; (2) the existence and contents of three transcripts and audio tapes of interviews with the victims conducted by Dr. Wetsman at Children's Hospital; (3) the existence and contents of Detective McGregor's field notes relating to his first interviews of the victims; (4) the fact the Child Advocacy Center interviewer, Omalee Gordon, wore a one-way ear microphone during her interview of the victims; (5) the existence of undocumented interview sessions by law enforcement with the victims discussing the facts of the case; (6) the fact the victims' biological mother was under investigation for child endangerment or neglect when she gave her statements; and, (7) the facts surrounding the relationship between the victims' biological father's wife and the Kenner Police Department.  Lande maintains the State either delayed the production of this evidence or denied its existence only to reveal the evidence at trial in violation of <u>Brady</u> and his due process rights.
>
> [FN36] <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
>
> In October 2003, Lande filed a motion for bill of particulars seeking information about any exculpatory evidence the State or its witnesses may have.  The State gave Lande open file discovery and filed a written response in January 2004 specifically stating that any exculpatory information would be turned over "prior to trial if and when it has any."
>
> Lande pursued various venues for discovery prior to trial.  It appears numerous discovery issues were handled between the parties

---

[69] Rec. Doc. 1-2, p. 2.

in chambers and were not transcribed. However, the following discovery matters can be gleaned from the record.

Lande sought several subpoenas duces tecum seeking information from Omalee Gordon at the Children's Advocacy Center, Drs. Scott Benton and Ellie Wetsman at Children's Hospital, and the victims' schools. Defendant specifically requested, among other things, audio and video tapes relating to the examination of each victim pursuant to a criminal investigation and protocols or written procedures for conducting forensic examination of child sexual abuse victims. The State filed motions to quash the subpoenas which were essentially denied after hearings held on November 10, 2004 and December 8, 2004. Thereafter, on February 17, 2005, the record shows the State requested and was granted the issuance of a subpoena duces tecum to Children's Hospital for the audio-taped statements of the victims given to Dr. Ellie Wetsman.

The audiotapes of Dr. Wetsman's interviews with the victims were given to Lande on the first day of trial. On the morning of trial, the State indicated it was in the process of copying the audio-taped interviews of the victims conducted by Dr. Wetsman and would immediately give defendant the copies and transcripts upon receipt. The State explained the medical records, presumably already in defendant's possession, showed a summary of what was stated on the audiotapes and noted there were no inconsistencies. It appears that, during this discussion, the copies of the audiotapes were given to the defense. These audiotapes were used by the State on the third day of trial during the testimony of Dr. Wetsman.

Before the jury was empaneled, the State provided the defense with Detective McGregor's notes of the victims' initial disclosure, which consisted of one letter-size page. The prosecutor explained he had only received the notes the day before. Defense counsel complained that he had asked for the notes "a long time ago" and proceeded to argue the impact the notes made on previously requested information pertaining to the sexual abuse case involving the victims' stepsister, F.S., to which he was denied access.[FN37] Defense counsel maintained Detective McGregor was the same officer who handled the investigation into the sexual abuse of F.S. He contended that, because the victims did not allege abuse until after Detective McGregor investigated F.S.'s allegations of abuse, the revelation of Detective McGregor's notes somehow made the records pertaining of F.S.'s case more compelling. The trial court asked the State to provide a copy of Detective McGregor's summary of the investigation into F.S.'s sexual abuse case if it existed and agreed to

conduct an in-camera inspection.  The record does not show that this matter was ever revisited during trial.  Nonetheless, these notes were admitted into evidence during the testimony of Detective McGregor over defense counsel's objection.

> [FN37] Defendant raises the issue of his denial of access to information relating to F.S.'s sexual abuse case, *infra*, in assignment of error number six.

The existence of the protocol was revealed during the testimony of the State's first witness, Detective Brian McGregor.  During his testimony, Detective McGregor referenced a protocol that dictates how a complaint of child sexual abuse is investigated.  Defense counsel objected to testimony pertaining to the protocol on the basis he had specifically asked for the protocol in discovery and had been told it did not exist.  The trial judge noted defendant's objection and the trial proceeded.

During Detective McGregor's explanation of the protocol and the interview process, defendant learned that the police communicated with the CAC interviewer, Omalee Gordon, during the interview process.  Specifically, Detective McGregor stated he was present in a separate room during the victims' interview at the CAC and explained that Ms. Gordon wore an ear piece that allowed the detectives to relay to Ms. Gordon questions they would like asked.  Detective McGregor explained Ms. Gordon ultimately decided if the question was appropriate and how the question would be asked if at all.  Defense counsel lodged another objection stating he was just then learning of an inter-relationship between the police and the CAC regarding the child abuse interview process despite having asked for the protocol well in advance of trial.  Direct examination continued but no further questions about the protocol were asked.   On cross-examination, defense counsel questioned Detective McGregor about the protocol, the interview process of the victims, and the investigation procedure.

Lande also complains of the undisclosed facts pertaining to the relationship between the victims' stepmother and the Kenner Police Department, the investigation of the victims' mother by child protection services, and the existence of unrecorded interviews between the police and the victims, all of which were revealed through the testimony of various witnesses during the course of the trial.

The relationship between the victims' stepmother and the Kenner Police Department was known to defense counsel prior to trial as evidenced by his questioning of Detective McGregor on cross-examination. Defense counsel's first question to Detective McGregor related to his previous contact with the victims' stepmother. Detective McGregor testified he was acquainted with her ex-husband who was a member of the Kenner Police Department. He further stated he first met the victims' stepmother after receiving a phone call from the ex-husband about the possible sexual abuse of their daughter, F.S.

The next issue defense counsel pursued on cross-examination of Detective McGregor was his interview of the victims' biological mother. Detective McGregor responded he first advised her of her rights because there was an issue she was present during the abuse and there were some allegations of drug abuse made during the interview of the victims. Defense counsel immediately objected, stating he was told prior to trial that the victims' mother was never a suspect and was not under investigation. He specifically stated he asked for information of whether the victims' mother was ever charged or accused of a crime. He claimed the information was relevant in his defense that the victims' mother's statement was coerced and given under the threat of prosecution. The trial judge noted that the mother was never charged or accused and overruled the objection.

The unrecorded interviews appear to be the contact Omalee Gordon had with the victims prior to the CAC recorded interviews. Detective McGregor testified that Omalee Gordon meets with the child victim prior to the recorded interview to see if the child is going to give an interview and to instruct the child about the interview process. Ms. Gordon was asked to elaborate on the "pre-interview" process during her cross-examination by defense counsel. She explained the purpose of the "pre-interview" was to establish a rapport with the child.

Lande urges this Court to look at the cumulative effect of the above late and non-disclosures as opposed to reviewing each piece of evidence individually. Lande contends the multitude of late disclosures as a whole demonstrates he was ambushed at trial and, thus, did not receive a fair trial.

In Brady v. Maryland,[FN38] the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of

the good faith or bad faith of the prosecution."  Favorable evidence includes both exculpatory evidence and evidence that impeaches the testimony of a witness whose credibility or reliability may determine guilt or innocence.[FN39]

> [FN38]  373 U.S. 83, 83 S.Ct. 1194, 1196-1197, 10 L.Ed.2d 215 (1963).

> [FN39]  *In re* Jordan, 04-2397 (La. 6/29/05), 913 So.2d 775, 782, citing Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); State v. Calloway, 97-796 (La.App. 5 Cir. 8/25/98), 718 So.2d 559, 562, writs denied, 98-2435 and 98-2438 (La. 1/8/99), 734 So.2d 1229, citing United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

Evidence is material only if there is a reasonable probability that the results of the proceeding would have been different if the evidence had been disclosed to the defense.  A "reasonable probability" is that which is sufficient to undermine confidence in the outcome of the trial.[FN40]  In determining materiality, a reviewing court must ascertain "not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."[FN41]

> [FN40]  State v. Johnson, 05-180 (La.App. 5 Cir. 11/29/05), 917 So.2d 576, 579, citing United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

> [FN41]  State v. Johnson, *supra*, citing Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995).

The United States Supreme Court has explained that "[t]here are three components of a true Brady violation:  The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."[FN42]

[FN42]  Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); State v. Louviere, 00-2085 (La. 9/4/02), 833 So.2d 885, 896, cert. denied, 540 U.S. 828, 124 S.Ct. 56, 157 L.Ed.2d 52 (2003).

In Kyles v. Whitley,[FN43] the United States Supreme Court made clear that materiality is not determined item by item but by the cumulation of the suppressed evidence.  Thus, even if each item by itself would not warrant a new trial, the accumulation may.

[FN43]  Kyles v. Whitley, 115 S.Ct. at 1567.

"Late disclosure as well as non-disclosure of evidence favorable to the defendant requires reversal if it has significantly impacted the defendant's opportunity to present the material effectively in its case and compromised the fundamental fairness of the trial."[FN44]  The impact on the defense of late disclosure of favorable evidence must be evaluated in the context of the entire record.[FN45]

[FN44]  State v. Harris, 01-2730 (La. 1/19/05), 892 So.2d 1238, 1250, cert. denied, 546 U.S. 848, 126 S.Ct. 102, 163 L.Ed.2d 116 (2005).

[FN45]  Id.

Lande complains of seven pieces of evidence that he asserts constituted Brady material but were either not disclosed by the State or untimely disclosed.  As stated above, there are three components of a Brady violation: 1) the evidence must be exculpatory; 2) the evidence must have been suppressed; and, 3) the defendant must have been prejudiced.

Three of the items of which defendant complains are tangible: the audiotapes from Children's Hospital, the protocol, and Detective McGregor's notes.  None of these three items were exculpatory or had impeachment value.  Exculpatory evidence by definition is that "which tends to justify, excuse or clear the defendant from alleged fault or guilt."[FN46]  Nothing in the audiotapes, the protocol, or the notes tended to clear defendant from guilt.

[FN46]  Black's Law Dictionary, Sixth Edition.

- 55 -

Further, none of the items had impeachment value. The audiotapes from Dr. Wetsman's interview of the victims at Children's Hospital did not contain any information that could have been used to impeach the credibility of any witness. The audiotapes were consistent with the medical reports prepared by Dr. Wetsman regarding her examination of the victims and did not contradict the testimonies of Dr. Wetsman or the victims. Likewise, Detective McGregor's notes from the victims' initial disclosure were consistent with his testimony and that of the victims and, thus, had no impeachment value. The protocol merely set forth Jefferson Parish's general procedure for investigating child abuse cases and contained no information that could have been used to impeach the credibility of any witness. Accordingly, we find that these three items fail the required components for a Brady violation.

Additionally, the fact that Omalee Gordon wore an ear piece during her interview of the victims had no impeachment value. Detective McGregor testified about the earpiece and Omalee Gordon admitted the existence of the ear piece when questioned by defense counsel on cross-examination. The fact defendant contends the ear-piece somehow affected Ms. Gordon's credibility does not make it impeachment material. The record shows both Detective McGregor and Ms. Gordon stated Ms. Gordon determined what questions were asked to the victims. The fact the police can communicate with Ms. Gordon during the interview process does not tend to discredit Ms. Gordon or show that she is biased.

As for the remaining three items, it is questionable whether they are even "discoverable evidence." Lande asserts the State failed to inform him of the existence of a relationship between the victims' stepmother and the Kenner Police Department via her previous marriage to a Kenner police officer and because of the report of her own daughter's sexual abuse that was investigated by Detective McGregor, who also investigated the present victims' allegations. This information does not appear to be material that can be "produced" by the State.

Notwithstanding, Lande has failed to show how this relationship was impeachment evidence. He appears to suggest the relationship reduces the credibility of Detective McGregor and/or the victims' stepmother. The fact this relationship may or may not show bias or affect the credibility of Detective McGregor or the victims' stepmother does not throw it into the realm of Brady material. Nothing in the record suggests Detective McGregor was biased in his investigation into the victims' allegations.

- 56 -

The fact the victims' mother was under investigation for child endangerment and/or child neglect at the time she gave her statement to the police was not impeachment evidence. Defendant claims the victims' mother was coerced into giving the statement under threat of prosecution for child endangerment or neglect. However, the victims' mother testified at trial and stated she had no fear that she was under investigation for child neglect when she gave her statement in June 2003. She explained that she received a letter from child protection services asking whether she was home when the incidents occurred but stated she was not upset by the letter. Additionally, as noted by the trial judge, the record reflects the victims' mother was never accused or charged with any crime.

Finally, the existence of unrecorded interviews was not impeachment evidence. Omalee Gordon testified that she met with the victims prior to the taped interview to establish a rapport with the children and to explain the interview process. There was no evidence the facts of the case were discussed in this "unrecorded interview" or that the discussion affected the credibility of any of the victims or witnesses or yielded any information that was inconsistent with any of the evidence or testimony at trial. The mere existence of a fact unknown to a defendant does not qualify that fact as impeachment evidence.

Moving to the last prong of the <u>Brady</u> violation test, there is no indication defendant was prejudiced by the late or non-disclosure of the above evidence.[FN47]

[FN47]  <u>Kyles v. Whitley</u>, 115 S.Ct. at 1555.

Despite Lande's claim he was ambushed at trial by <u>Brady</u> violations, the record shows he effectively presented his defense and strategically incorporated the above evidence during the five days of trial. The record shows defendant's expert witness, Dr. David Clark, had the opportunity to review the audiotapes from Children's Hospital prior to his testimony on the fifth day of trial. Defense counsel used the protocol throughout the trial to question various witnesses. Although he did not cross-examine Detective McGregor specifically about the protocol, he used it on the second day of trial to cross-examine Detective Herbert Hille, who prepared the initial and investigative report. Detective Hille testified he was familiar with the protocol stating it set forth the standard procedure for handling cases involving child abuse cases. Defense counsel then questioned Detective Hille about the "interview team," which was mentioned in

the protocol, and the inter-relationship between the police, the Office of Community Services, the CAC, and the District Attorney's office.

Defense counsel also questioned Dr. Ellie Wetsman about the protocol on the third day of trial. Dr. Wetsman testified she was unaware of the Jefferson Parish protocol and stated she had no knowledge about Children's Hospital being an agent of the coroner's office as stated in the protocol.  It appears defense counsel strategically did not inquire about the protocol with Omalee Gordon or his own expert, Dr. Clark, who did not testify until the last day of trial.

Additionally, defense counsel was the one who elicited and explored the existence of the relationship between the victims' stepmother and a Kenner Police Department police officer thereby showing he had prior knowledge of this fact prior to trial.  Defense counsel's prior knowledge of this relationship was also evidenced in his writ application dated June 14, 2004, which was well in advance of trial.

Further, defense counsel thoroughly questioned the victims' mother about whether she feared prosecution when she gave the statement to the police.

A review of the entire record makes it clear the alleged untimely disclosure of the above evidence did not impair defendant's ability to present his defense and, therefore, did not prejudice him. The effectiveness of defendant's defense is further demonstrated by his acquittal on three of the five counts.

In summary, we find that the delayed disclosures or non-disclosures of the above evidence did not constitute <u>Brady</u> violations.[70]

Further, as already discussed in this opinion, the Court of Appeals also separately addressed petitioner's claim regarding F.S.'s file and denied relief.[71] The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[72]

---

[70] <u>Lande</u>, 934 So.2d at 293-98; State Rec., Vol. II of XIV.

[71] <u>Lande</u>, 934 So.2d at 299; State Rec., Vol. II of XIV.

[72] <u>State v. Lande</u>, 954 So.2d 154 (La. 2007) (No. 2006-K-1894); State Rec., Vol. III of XIV.

In this federal application, petitioner reasserts several of his <u>Brady</u> claims. Specifically, he again challenges the withholding of F.S.'s file, the Kenner Police Department Child Sexual Abuse Protocols, and the alleged victims' school records and interviews. This Court has already addressed in detail the claim concerning F.S.'s file and found it to be meritless;[73] therefore, that issue need not be revisited. Moreover, for the following reasons, the claims concerning the protocols, school records, and interviews likewise have no merit.[74]

As to the protocols and victim interviews, even if those materials constituted <u>Brady</u> evidence, which is doubtful in that they are not exculpatory and seemingly had no impeachment value, those items were in fact produced before or during trial. Although there was a delay in their production, the defense was not unduly hampered by the delay. At the post-conviction evidentiary hearing, defense counsel, in explaining why no continuance was requested as a result of the late disclosure, testified:

> I mean, I looked at 'em, we studied 'em, we went over them. I remember the next day, or of that evening, going and speaking with our witness – our expert witness about them. He looked at it, I looked at it, and he and I met early the next morning and talked about it before the trial started; so I mean we did go over it. We had an opportunity to look at.[75]

Simply put: where, as here, the evidence at issue came to light during trial in sufficient time for defense counsel to put it to effective use, it was not "suppressed" in violation of

---

[73] <u>See</u> pages 27-31, *supra*.

[74] Previously in this opinion, this Court has summarized the applicable law concerning claims under <u>Brady</u> and its progeny. <u>See</u> pages 29-30, *supra*. That summary need not be repeated here.

[75] State Rec., Vol. XIII of XIV, transcript of April 28, 2011, p. 39.

Brady and its progeny.  See, e.g., Lawrence v. Lensing, 42 F.3d 255, 257 (5th Cir. 1994); United States v. McKinney, 758 F.2d 1036, 1049-50 (5th Cir. 1985); Smith v. Travis, Civ. Action No. 08-4627, 2009 WL 1704335, at *10 (E.D. La. June 16, 2009); Stogner v. Cain, Civ. Action No. 05-4317, 2008 WL 269078, at *20 (E.D. La. Jan. 30, 2008); Baker v. Cain, Civ. Action No. 05-3772, 2007 WL 1240203, at *5 (E.D. La. Apr. 26, 2007).

As to the subclaim regarding the school records, the state argues both that the subclaim is procedurally barred and has no merit.  Although the claim does appear to be procedurally barred because it was denied by the state courts on the grounds that the issue was raised in the trial court and inexcusably not pursued on appeal,[76] the Court will pretermit a finding concerning the procedural bar because, in any event, the claim clearly has no merit for the following reasons.[77]

First, as the state notes in its response, the records were not withheld by the prosecution.  Rather, the records were subpoenaed by the defense directly from the school, produced

---

[76]   State Rec. Vol. IV of XIV, Order dated July 12, 2010.  The Louisiana Fifth Circuit Court of Appeal found no error in that ruling.  Lande v. Cooper, No. 10-KH-768 (La. App. 5th Cir. Oct. 5, 2010); State Rec., Vol. IV of XIV.  The Louisiana Supreme Court then denied relief without assigning reasons.  Lande v. Cooper, 85 So.3d 87 (La. 2012) (No. 2011-KP-1857); State Rec., Vol. XIV of XIV.

[77]   As previously noted, a federal court need not decide whether a claim is procedurally barred if the claim clearly fails on the merits.  Glover v. Hargett, 56 F.3d 682, 684 (5th Cir. 1995); Wiley v. Puckett, 969 F.2d 86, 104 (5th Cir. 1992); Corzo v. Murphy, Civ. Action No. 07-7409, 2008 WL 3347394, at *1 n.5 (E.D. La. July 30, 2008); Lee v. Cain, Civ. Action No. 06-9669, 2007 WL 2751210, at *9 (E.D. La. Sept. 18, 2007).

for review by the court *in camera,* and ultimately not released to the defense by the court.[78] Moreover, in any event, even if this were still construed as some species of a <u>Brady</u> claim, the records simply were not subject to disclosure under <u>Brady</u>.  <u>Brady</u> prohibits only the suppression of evidence which is "material" in the constitutional sense. On that point, the United States Supreme Court has held:

> Such evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different, although a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal. The reversal of a conviction is required upon a showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.

<u>Youngblood</u>, 547 U.S. at 870 (internal citations and quotation marks omitted).

In this case, the state district court held: "The petitioner has not met his burden of proof on this claim, as he does not prove that the school records were material to guilt or punishment."[79] The state court was obviously correct.  The defense purportedly wanted the records to show that C.M.'s grades improved after petitioner entered her life, opining that changing grades are evidence of the presence or absence of sexual abuse.[80]  Even if one ignores the fact that the records were not necessary to establish whether there were any changes in the alleged victims'

---

[78]  State Rec., Vol. VII of XIV, transcript of November 10, 2004; State Rec., Vol. VII of XIV, transcript of February 14, 2005, pp. 7-10.

[79]  State Rec. Vol. IV of XIV, Order dated July 12, 2010, p. 3.

[80]  <u>See</u> Rec. Doc. 1-2, p. 36.

grades,[81] this claim fails for several other reasons.  First, it appears that the records did not in fact show the academic improvement alleged by petitioner.[82]  Second, even if the records had shown such improvement, petitioner has offered nothing, such as scientific studies, in support of his bare contention that academic improvement is somehow indicative of the absence of sexual abuse.  Third, even if petitioner had made a showing that such a connection exists in some instances, that evidence is hardly of a magnitude which would have put this case "in such a different light as to undermine confidence in the verdict."  At best, the records might have been helpful to the defense in an attempt to make such an argument to the jury; however, again, neither Brady nor any provision of the federal constitution requires the state to produce all evidence which might merely prove helpful to the defense.  See, e.g., Kyles v. Whitley, 514 U.S. 419, 436-37 (1995) ("[T]he Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense.").

For all of these reasons, it is clear that there is no merit to petitioner's contention that Brady was violated in this case, and, therefore, this claim should be denied.

## **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Phillip Lande be **DISMISSED WITH PREJUDICE**.

---

[81]   As the state notes in its response, the lack of access to the actual records did not prohibit the defense from exploring this issue at trial.  For example, defense counsel could simply have questioned the victims or their parents concerning the issue.

[82]   State Rec., Vol. VII of XIV, transcript of February 14, 2005, p. 7.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[83]

New Orleans, Louisiana, this seventeenth day of July, 2013.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[83] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.